PIONEER SAVINGS & LOAN ASS'N. v. WILKINS *et al.*

The constitutution and by laws of a building association provided that the shareholder should not have any claim to any interest in the affairs or funds of the association, nor any control of them, except as specifically set forth in the by-laws, and should assume no further liability except as therein prescribed. A borrower from a building association thereafter purchased, with the consent of the association, certain shares of its stock, and after the assignment thereof fully paid up installments thereon, and all the interest, until the time when, under the terms of the stock certificate, he became entitled to receive from the plaintiff the sum agreed upon in said certificate. In the meantime, and after the maturity of the certificate, the association went into voluntary liquidation. *Held*, that in proceedings by the as-

sociation to enforce its loan the borrower was entitled to set off the full amount agreed to be paid under the certificate, and not its depreciated value.

(Opinion filed May 4, 1901.)

Appeal from circuit court, Marshall county. HON. A. W. CAMPBELL, Judge.

Action by the Pioneer Savings & Loan Association against Albert Lawrence, Jr., Jennie Lawrence, and Till L. Wilkins, to foreclose a real estate mortgage. Judgment for plaintiff, and defendants·appeal. Reversed.

*Byron Abbott* and *T. H. Null,* for appellants.

The contract in question has been carried out by the defendants, and if it is to be enforced at all it must be enforced as made and all its terms and provisions must govern. Kadish v. Association, 38 N. E. 236.

The plea of *ultra vires* is looked upon with disfavor by the courts when presented by a corporation seeking to avoid an obligation merely in excess of its powers and not in violation of an express statutory provision, especially where the other party has in good faith fully performed and the corporation has received the benefit of such full performance. Linkauf v. Lombard, 33 Am. St. Rep. 743; Kenedy v. Bank, 40 Am. St. Rep. 69; Railroad v. Smith, 52 Am. Rep. 358; Ins. Co. v. Ely, 13 Am. Dec. 108; Association v. Blue, 120 Ill. 128; Ames Co. v. Barlow, 20 Am. Rep. 504; Bank v. Elevator Co., 51 N. W. 641; Radish v. Association, 38 N. E. 236.

The terms of the contract in question destroy all mutuality between the defendant and those shareholders who may be classed as the promoters and controllers of the association. Loan Co. v. Peck, 49 S. W. 160; Loan Co. v. Pancoast, 43 S. W. 280.

*George Bingham* (*George D. Emery,* of counsel), for respondent.

The members of a Mutual Building and Loan Association are liable in proportion to the stock contributions of each for the losses and expenses of the society. They share alike in its profits and in its losses and whether borrowers or investors their rights and liabilities as members remain the same. Regardles of the form of contract if the society is unable from losses and impairment to pay the full par value of its shares at the estimated maturity period then the loss must be borne pro rata by the several members. O'Malley v. Peoples B. & L. Ass'n, 36 N. Y. Supp. 1016; Price v. Kindall, 36 S. W. 810; Christian's Appeal, 102 Pa. St. 189; McGrath v. Hamilton Ass'n, 44 Pa. St. 383; Pattison v. Albany B. & L. Ass'n. 63 Ga. 373; Eversman v. Schmitt, 53 Oh. St. 174; Laurel Run Bld. Ass'n. v. Sperring, 106 Pa. St. 339; Wohlford v. Citizens B. & L. Ass'n, 140 Ind. 662; Leohy v. Northwestern B. & L. Ass'n, 76 N. W. 625; Hale v. Cairns, 77 N. W. 1010; U. S. Savings & Loan Ass'n. v. Shain, 77 N. W. 1006.

Corson, J. This is an action by the plaintiff, a Minnesota corporation, to foreclose a mortgage upon real estate owned by the defendants Albert Lawrence, Jr., and Jennie Lawrence, and situated in the town of Britton, in this state. The defendants, in their answer, plead payment of said mortgage in full; also usury. As a third defense and counterclaim, the defendant Lawrence alleges that at the time of making said notes and mortgage the defendant Till L. Wilkins was the owner and holder of ten shares of stock in the plaintiff association, for which the plaintiff had issued to her a certificate, in which it promised to pay the holder the sum of $100 for each of said shares at the expiration of five years from the date of said certificate, which was December 2, 1889, on condition of payment of interest, monthly dues, etc. The defendants allege that with the con-

sent of the plaintiff the said shares of stock were, on March 28, 1891, assigned to the defendant Albert Lawrence, Jr., and the mortgaged property conveyed to him, and that subsequently to such assignment he fully paid all installments on said stock, and all interest, as provided in said notes, and that he has fully kept all the conditions and complied with all the requirements of said contract and with the constitution and by-laws of said plaintiff down to and including the time of five years from the date of said stock certificate whereby he became entitled to receive from the plaintiff the sum of $800, as agreed in said certificate, on account of said stock, and that said sum is now due and owing from plaintiff to said Lawrence, and that he is entitled to set off and counterclaim that sum against any sum that may be due from the defendants on said notes and mortgage. To this answer the plaintiff interposed a reply setting out various matters, but which, in the view we take of the case, it will be unnecessary to insert in this opinion, except so far as the same alleged that heretofore, on the 27th day of April, 1897, the plaintiff in due form of law went into voluntary liquidation. The court found the facts and stated its conclusions of law thereon, and among these findings it finds that the plaintiff issued to Till L. Wilkins a certificate of ten shares of stock to the amount of $1,000, in which it was agreed by the plaintiff that it would pay to the holder thereof the sum of $100 for each of said shares at the end of five years from the date thereof, provided that the holder thereof fully complied with the conditions of said contract. The court further finds that there was a depreciation in the value of said stock, and that the same at its prescribed maturity date was not worth its par value, but was then, and now is, of the value of $570, and no more. The question therefore presented is, was the defendant entitled, under and by virtue of this contract, made with the plaintiff, to counterclaim the par value of his stock

in accordance with its agreement as against the foreclosure proceedings? It is contended on the part of the appellants that the contract made by the plaintiff was a binding and valid contract, and that the defendants having fully complied with all the conditions to be performed on their part, are entitled to have the contract enforced in accordance with its terms, and that the fact that the plaintiff subsequently to the time when said agreement was to be performed on its part went into voluntary liquidation cannot affect appellants' rights. The respondent insists that, inasmuch as it is shown that the corporation has gone into voluntary liquidation, it is entitled to an equitable rebate for the amount due upon its said contract, and that the defendants are only entitled to the actual cash value of said shares of stock, for the reason that the association is a mutual benefit association, in which each shareholder must sustain his or her proportion of the loss sustained by the association. But it would seem from the constitution and by-laws of the association that it is not a mutual association, as by article 12 of the constitution it is provided as follows: "The said shareholder shall not have any claim to any interest in the affairs, assets, or funds of this union, nor the control of them, except as above specifically sea forth, or as provided in the by-laws, and assumes no further liability of any kind whatsoever, except as hereinbefore described."

We are of the opinion that the contention on the part of the appellants is correct, and that the appellants are in fact entitled to counterclaim as against the respondent the full amount agreed to be paid on each share of stock. The contract on the part of the respondent is clear and specific, and there is no ambiguity in its terms. It agrees to pay the shareholder $100 for each share at the end of five years from the date thereof, the only condition being that the holder shall pay all interest, monthly dues, etc. And the court finds that

the defendants had fully performed all the conditions on their part to be performed specified in the contract. At the time this contract became due, December 2, 1894, the plaintiff was still carrying on its business, and did not go into liquidation until some time in 1897. Therefore at the time they had, by the terms of the contract, agreed to pay the sum of $100 for each share the association was not insolvent, so far as the record discloses, and upon its own theory was not entitled to retain any part of the amount due to the defendants upon their contract.

In a recent case decided by the court of appeals of Texas, in which the plaintiff here was defendant, reported as Loan Co. v. Peck, 20 Tex. Civ. App. 111, 49 S. W. 160, substantially the same questions as those now under consideration were involved and decided by that court. The action was brought by Peck and others to cancel a trust deed and notes executed by them to the association, and to recover the balance due them under a stock agreement substantially the same as the one in the case now before us. The Texas court concludes an exhaustive discussion of the question as follows: "The contract between the parties embodied in the certificate of shares was a simple agreement on the part of appellant company to pay appellees $10,000 on January 1, 1897, upon the sole condition that they pay the several sums of money at the times and in the manner stipulated in the contract. The contract was so construed by the district court. But the company contended that the contract was nothing more than a subscription of shares of capital stock of a mutual benefit society, and that their obligation to pay the same was with the express reservation that at the expiration of the agreed maturity period the company had earned enough to pay all its obligations on the same basis, and, if not, that it should only pay on said shares the pro rata earnings of the company. * * * While we think that the con-

tract admits of no other construction than that placed upon it by the court, yet, if it does, it would seem, upon principle and authority, that, the appellees having been induced to enter into the contract upon the truth of the representations contained in the letter, the appellant company would be estopped from insisting upon any other construction. The contention of appellant company that it is a mutual benefit association is refuted by the thirteenth condition upon which the obligation sued on was issued. The condition is as follows: 'The holder of this certificate shall have no claim or interest in the affairs, assets, or funds of the union, nor control over them, except as specifically set forth in the certificate or in the by-laws; and he or she assumes no further liability of any kind whatever, except as stated in this certificate and in the by-laws.' The only interest given the shareholder in the by-laws and certificate is the right to vote in person or by proxy at stockholders' meetings, and the right to collect $100 per share at the expiration of 6½ years; and the only liability specified in either the certificate or by-laws is the payment of monthly or quarterly dues during the stipulated contract period, under penalty of fines and forfeitures. Thus it is shown that the liabilities and obligations of the company and its shareholders are separate and distinct, and, as between them, are only such as arise from the contract. Each is to perform under the contract, his or its part of the agreement. If one perform its agreement, and the other does not, he is liable for its non-performance. The appellees have fully performed theirs; the appellant has not; and the judgment appealed from simply requires it to do what it obligated itself to do by its contract. The contract embodied in the certificate is like the one in Loan Co. v. Pancost (Tex. Civ. App.) 43 S. W. 280; and the construction given it by the trial court is the same as was placed upon it by us in the case referred to, and our construction was upheld by the

supreme court by its denying an application for writ of error in that case. We find no error in the judgment appealed from, and it is affirmed." It will be observed that the condition in the contract referred to in that case is substantially the same as that contained in the contract in this case, and that the court of appeals of Texas held that under that condition the association was not a mutual benefit association, and that the association had no claim against the plaintiff in that action for a rebate from the amount which by the terms of its contract it had agreed to pay. We fully concur in the views expressed by that court, and hold that in the case at bar the court was in error in assuming to fix the value of the stock, and to allow the defendants herein to recover only such value. Under the other findings of the court the defendants were entitled to be allowed the full amount due them upon their certificate by way of counterclaim, and the judgment of the court below should have been in favor of the defendants. The judgment of the court below is reversed, and that court is directed to enter judgment canceling the notes and mortgage executed by the defendants and certificate of stock, and enter judgment in favor of the defendants for the balance due on said contract.