## HAMMERQUIST *et al* v. PIONEER SAVINGS & LOAN CO.

A stock certificate issued by a loan company stipulated that on compliance with its by-laws and performance of all agreements it would pay on a specified date $100 for each share of such stock. The conditions on which the certificate was accepted nowhere suggested that the value of the matured stock was to depend on the financial condition of the association. The holder of the certificate was to have no interest in the affairs of the company, nor any control over them, and was to assume no further liability, except as stated in the certificate and by-laws. The company's by-laws contained no provision inconsistent with the definite contract expressed in the certificate. Representations made part of the contract declared that such company matured its stock at a definite time. *Held*, that on the holder's compliance with the contract the company was bound to pay him, at the expiration of such period, the specified value of such shares, and not their value based on the company's financial condition.

(Opinion filed October 2, 1901.)

Appeal from circuit court, Pennington county HON. LEVI MC-GEE, Judge.

Action by Peter A. Hammerquist and another against the Pioneer Savings & Loan Company to recover certain usurious interest and damages, together with statutory penalty, for refusal to enter satisfaction of a mortgage. From a judgment in favor of plaintiffs and an order denying its application for a new trial, defendant appeals. Affirmed.

*Wood & Buell* and *Geo. D. Emery,* for appellant.

The payment of dues upon his stock by a member of a build-

ing and loan association are not *ipso facto* payments on his loan and such payments do not reduce it *pro tento* but the amount upon which interest is to be computed remains the same during the entire time of the loan.  O'Malley v. People's B. and L. Asso, 36 N. Y. Supp. 1016; 4 Am. & Eng. Ency. of Law (2nd ed.) 1058; 2 Beach on Contracts, Sec. 1218; Reeves v. Ladies Bldg. Assn. 56 Ark. 335; Endlich on Bldg. Assns., Sec. 477, 77; Spring Garden Ass'n. v. Tradesman's Ass'n, 46 Pa. St. 493; Delano v. Wild, 6 Allen 1; Mechanic's Bldg. & Loan Ass'n v. Conover, 14 N. J. Eq. 219; Somerset Bldg. Ass'n v. Vandevere, 11 N. J. Eq. 382; People's Ass'n v. Furey, 20 Atl. Rep. 890; El Paso Bldg. Ass'n v. Sweeney, 26 S. W. 290; Pioneer S. & L. Ass'n. v. Oxford, 35 S. W. 1078; Pioneer S. & L. Ass'n. v. Cannon, 36 S. W. 386; Post v. Mechanic's Bldg. Ass'n. 37 S. W. 216; Mercantile Ass'n. v. Zane, 38 Atl. 421; Anniston L. & T. Co. v. Southern B. & L. Ass'n 101 Ala. 582; Price v. Kendall, 35 S. W. 710; Towle v. Am. B. & L. Ass'n. 61 Fed. 131, 75 Fed. 938; McGrath v. Hamilton Ass'n. 44 Pa. St. 383; Pathson v. Albany B. & L. Ass'n, 63 Ga. 373; Eversham v. Schmidt, 53 O. St. 174; Laurel Am. Bldg. Ass'n. v. Sperring, 106 Pa. St. 339; People v. Lowe, 117 N. Y. 175; Wohlford v. Cit. B. & L. Ass'n., 40 N. E. 694; Chapman v. Young, 65 Ill. App. 131; Wangerin v. Aspel, 47 O. St. 250; Knudson v. N. W. B. & L. Ass'n, 69 N. W. 889; Leahy v. Bldg. & L. Ass'n, 76 N. W. 625; Hale v. Cairns, 77 N. W. 1010.

*Chas. W. Brown* and *O. L. Cooper,* for respondents.

HANEY, J.  The defendant is a building and loan association, formerly named the "National Building, Loan and Protective Union," existing under the laws of Minnesota, with its principal place of business at Minneapolis.  On December 1, 1890, the plaintiffs,

who held 13 shares of defendant's capital stock, each of the par value of $100, borrowed of defendant $1,000, giving their note or obligation, due 76 months after date, secured by a mortgage upon real property in this state, and an assignment of their stock. Claiming to have paid their loan in full, and certain sums of usurious interest, the plaintiffs instituted this action to recover such interest and damages, together with the statutory penalty for defendant's refusal, after demand, to enter satisfaction of the mortgage. Defendant denied that the loan had been paid, and by way of counterclaim sought to enforce its mortgage lien to the extent of the balance alleged to be due thereon. The action was tried without a jury, the court finding that on May 1, 1897, the sum of $1,000 was due defendant on the note, and the sum of $1,300 was due the plaintiffs on their stock, leaving a balance of $300, for which, with interest and the statutory penalty, they were given judgment. From this judgment and the order denying its application for a new trial, defendant appealed.

It is undisputed that the plaintiffs paid interest and premium on their note, according to its terms, from date to and including April, 1897; that they made each and all of the payments upon their stock they were required or requested to make; and that they duly performed all the conditions of their contract with defendant. Hence, the usury issue having been eliminated, the only real controversy turns upon the amount for which plaintiffs should receive credit on account of their stock. On this branch of the case the court below made the following finding: "That the period of maturity fixed on its said certificate of shares issued to said Peter A. Hammerquist as aforesaid was and is a fixed and definite maturity, and the said shares of stock, by the terms thereof, matured at a fixed and definite time, to-wit, on the 1st day of May, 1897; that on and by the said certificate of shares the defendant promised and agreed to pay to

the said shareholder, Peter A. Hammerquist, his heirs, executors, administrators, or assigns, absolutely, and without condition, the sum of $100 for each of said thirteen shares at the end of six and one-half years from date of said certificate, to-wit, the 1st day of May, 1897." It is contended that the period of maturity mentioned in the stock certificate issued to plaintiffs was merely an estimate; that the value of the stock depended upon the financial condition of the association; and that its value, according to a plan of liquidation adopted by the association, and approved by the public examiner of Minnesota on April 29, 1897, after all the payments requested of the plaintiffs had been made, was $777,40. In an action recently decided by this court, wherein the present defendant was plaintiff, the same contention regarding the nature of its contract with borrowing members was carefully considered, and held to be untenable. Association v. Wilkins, 14 S. D. 490, 85 N.W. 994. Further investigation has served to increase our confidence in the correctness of the views then expressed. The certificate issued to plaintiff contains the following: "This certifies that Peter A. Hammerquist, of Farmingdale, county of Pennington, State of South Dakota, is hereby constituted a shareholder in the National Building, Loan and Protective Union, incorporated under the laws of the State of Minnesota, and holds thirteen (13) shares therein of one hundred dollars ($100) each, and in consideration of his payment of the admission fee, together with his performance of all agreements, and his full compliance with the terms and conditions and by-laws printed on the front and back, respectively, of this certificate, which are hereby referred to and make a part of this contract, the said National Building, Loan and Protective Union agrees to pay to said shareholder, or his heirs, executors, administrators, or assigns, the sum of one hundred dollars for each of said shares at the end of six and one-half years from

the date hereof, payable in the manner and upon the conditions and by-laws hereto attached. All payments to be made by said union under the terms of this certificate are payable only at the office of the union at Minneapolis, Minnesota, within ninety days after the acceptance and approval of satisfactory proofs. This certificate of shares is issued to and accepted by the shareholder upon the following terms and conditions, to which said shareholder hereby assents." No where in the "terms and conditions" which follow the portion quoted is there any suggestion that the value of matured stock shall depend upon the financial condition of the association but elaborate rules are laid down for computing the amount to be paid by the association if stock be withdrawn before the stipulated period of maturity, and in every instance such amount is made to depend upon the sums which have been paid by the holder of the stock, and it is declared in the certificate itself that "the holder of this certificate shall have no claim or interest in the affairs, assets, or funds of the union nor control over them, except as specifically set forth in this certificate or in the by-laws, and he or she assumes no further liability of any kind whatsoever, except as stated in this certificate and the by-laws." Nor did the by-laws of the association make any provision inconsistent with the certain and definite contract expressed in the stock certificate; and in the printed representations of the association, which entered into and became a part of the contract, it is expressly declared that the defendant "is the only building and loan association governed by the laws of the State of Minnesota which matures its stock at a definite and certain time, and has a definite and certain interest and premium." The clear and explicit terms of the written contract and express written representations of the association cannot be construed otherwise than they were by the learned circuit court in this action. There was an express promise

on the part of the association to pay the plaintiffs, their heirs, executors, administrators, or assigns, the sum of $100 for each share of stock at the end of six and one-half years from the date of the certificate, provided the plaintiffs, their personal representatives or assigns, should perform all the conditions of the contract on their part. If such was the contract, it could not, of course, be impaired by an act of the Minnesota legislature passed and approved in 1897. Were it conceded that members of a "purely mutual" building and loan association have no rights which cannot be abrogated by its board of directors, it would not follow that the contract in this case could be modified to the extent contemplated by defendant's plan of liquidation, for the reason that defendant is not a mutual association. The mutuality which would exclude members from any claim upon or interest in the profits of a concern, and at the same time compel them to share in its losses, is decidedly more fanciful than real. Notwithstanding any language in its by-laws designed to describe the benevolent purposes of the defendant association, it should be regarded as a purely business corporation, engaged in a purely business enterprise, to be viewed in the same light as are other private corporations for profit. Having decided that the plaintiffs were entitled to a credit of $1,300 on account of their stock, the other assignments of error discussed by appellant's counsel are immaterial, and the judgment is affirmed.